**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| R.H. and T.S., individually and as parents and next friends of J.S., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>CLINTON PRAIRIE SCHOOL CORPORATION,<br><br>Defendant. | ) | Case No. 1:26-cv-01441-MPB-MJD |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH JURY TRIAL DEMAND**

Plaintiffs, R.H. and T.S., individually and as parents and next friends of J.S., a minor child (collectively, "Plaintiffs"), by counsel, file this First Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1) against Defendant Clinton Prairie School Corporation ("Defendant" or "Clinton Prairie"), and state as follows:

## I. NATURE OF THE ACTION

1. This civil action arises from Clinton Prairie's exclusion of J.S., a ten-year-old child with disabilities, from school for approximately four months because of a single statement he made to a classmate during a recess dispute. The statement was a product of his disabilities, and J.S.'s therapist determined that he posed no danger.

2. Plaintiffs bring claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); Title II of the Americans with

Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA"); and 42 U.S.C. § 1983. Plaintiffs do not assert any claim under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA").

3. J.S. has Attention-Deficit/Hyperactivity Disorder, combined type; Autism Spectrum Disorder, Level 1; and a learning disorder affecting word decoding and spelling. Rather than evaluate J.S. or reasonably modify its discipline policy, Clinton Prairie applied a practice of treating "all verbal threats the same way." It suspended J.S. for twelve school days without services and then excluded him from school, placing him on homebound instruction with ninety minutes of live instruction per week, until January 21, 2026. Clinton Prairie's conduct caused J.S. and his parents educational, economic, and emotional harm.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because this action arises under Section 504, the ADA, and 42 U.S.C. § 1983.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and the events giving rise to the claims occurred in this District.

6. Assignment to the Indianapolis Division is proper because the acts and omissions giving rise to this action occurred in Clinton County, Indiana.

7. Plaintiffs omit from this First Amended Complaint the state-law claim pleaded as Count V of their original Complaint. That omission is without

prejudice to the claim's reassertion and without any concession that Plaintiffs' prior notices under the Indiana Tort Claims Act, Ind. Code § 34-13-3, or the Indiana Claims Against Public Schools Act, Ind. Code § 34-13-3.5, were deficient.

## III. PARTIES

8. Plaintiff J.S. is a minor child who at all relevant times resided in Clinton County, Indiana. J.S. is an individual with a disability within the meaning of 29 U.S.C. § 705(20) and 42 U.S.C. § 12102, and a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2) and 34 C.F.R. § 104.3(l)(2). J.S. is identified by his initials under Federal Rule of Civil Procedure 5.2(a)(3).

9. Plaintiff R.H. is the mother of J.S., with whom J.S. resides. At all relevant times R.H. resided in Clinton County, Indiana. R.H. brings this action individually and as parent and next friend of J.S.

10. Plaintiff T.S. is the father of J.S. At all relevant times T.S. resided in Hamilton County, Indiana . T.S. brings this action individually and as parent and next friend of J.S.

11. Defendant Clinton Prairie School Corporation is a public school corporation organized under the laws of the State of Indiana, with its principal offices at 2390 S. County Road 450 W, Frankfort, Clinton County, Indiana. It receives federal financial assistance within the meaning of Section 504, is a public entity within the meaning of 42 U.S.C. § 12131(1), and is a "person" who acted under color of state law within the meaning of 42 U.S.C. § 1983.

## IV. ADMINISTRATIVE PROCEEDINGS

12. On or about February 11, 2026, Plaintiffs filed a Request for Due Process Hearing with the Indiana Office of Administrative Law Proceedings, No. DOE-2602-000778.

13. That administrative proceeding was resolved by a written agreement effective August 7, 2026, and has been dismissed. The claims asserted in this First Amended Complaint are not claims under the IDEA or 511 IAC 7.

14. Plaintiffs seek compensatory damages, a remedy the IDEA does not provide. The IDEA's exhaustion requirement, 20 U.S.C. § 1415(l), therefore does not bar Plaintiffs' claims. *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142 (2023).

15. The gravamen of Plaintiffs' claims is disability discrimination: the exclusion of J.S. from school and its activities, and the punishment of disability-related conduct without reasonable modification of Defendant's policies. *See Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154 (2017). To the extent any exhaustion requirement applies to any claim for relief, Plaintiffs satisfied it by pursuing the administrative process to resolution, and further administrative proceedings would be futile because that process cannot award the damages Plaintiffs seek.

## V. FACTUAL ALLEGATIONS

### A. J.S. and His Disabilities

16. J.S. was born in 2015. He has attended Clinton Prairie Elementary School since he enrolled in kindergarten in August 2020, and he was in fifth grade during the 2025–2026 school year.

17. J.S. was diagnosed with ADHD, combined type, in first grade. In the spring of 2022, Clinton Prairie found J.S. eligible for special education and related services under the category of Other Health Impairment, and it has maintained an Individualized Education Program ("IEP") for him since that time.

18. On October 24, 2025, clinical neuropsychologist Kelly S. Earnst, Ph.D., HSPP, evaluated J.S. and diagnosed Autism Spectrum Disorder, Level 1, without accompanying intellectual impairment; ADHD, combined type; and an unspecified learning disorder involving word decoding and spelling. Dr. Earnst found impairment in sustained attention, working memory at the fourth percentile, word decoding at the second percentile, impulsivity in speech, cognitive and behavioral rigidity, and emotional dysregulation.

19. On November 14, 2025, an occupational therapy evaluation by Franciscan Health measured J.S.'s fine motor integration at an age equivalent of approximately six years and found sensory processing scores more than two standard deviations from the norm.

20. J.S.'s disabilities substantially limit major life activities including learning, reading, concentrating, thinking, communicating, and neurological and brain function. *See* 42 U.S.C. § 12102(2).

21. Impulsive speech, rigid thinking, difficulty processing perceived unfairness, and difficulty regulating emotion are characteristic features of J.S.'s disabilities.

**B. Clinton Prairie's Knowledge of J.S.'s Disabilities**

22. Clinton Prairie's February 2022 psycho-educational evaluation of J.S. recorded that he "does not understand personal space," that "[h]is outbursts are increasing as work becomes more difficult," that he "struggles to socialize," that he "does not comprehend rules to games," and that "[t]hings have to go his way or he will not participate."

23. J.S.'s IEPs recorded that he "lacks eye contact when talking to teachers, other adults, and often time peers."

24. R.H. raised concerns about possible autism with J.S.'s teachers as early as the end of his kindergarten year, and she requested speech-language services for J.S. on multiple occasions in the years before 2025.

25. Before September 17, 2025, Clinton Prairie had never evaluated J.S. for autism, had never conducted a functional behavioral assessment of J.S., and had never implemented a behavior intervention plan for him.

**C. The September 17, 2025 Incident**

26. On September 17, 2025, J.S.'s class was required to walk a lap at recess because students had been talking in line. J.S. believed that he had not been part of the problem.

27. While walking the lap, J.S. told a classmate, "I'm going kill the recess teachers." J.S. did not direct the statement to any staff member, and he walked the extra lap as directed.

28. When Principal Luke Harlow asked J.S. about the statement, J.S. explained that he had been assigned laps even though he was not part of the line issue, and he admitted making the statement.

29. In five years at Clinton Prairie, J.S.'s only prior discipline was a 2022 warning for a bus-safety issue. Clinton Prairie's own staff reported that J.S. had shown no pattern of threatening or impulsive behavior at school.

30. J.S.'s therapist conducted a threat assessment after the incident and determined that J.S. posed no danger. Clinton Prairie was informed of that determination.

**D. Removal Without Services**

31. Principal Harlow suspended J.S. out of school "pending expulsion."

32. Clinton Prairie kept J.S. out of school from September 17 through October 2, 2025, a period of twelve school days. Clinton Prairie's discipline record for the suspension states: "No services provided."

33. The exclusion of a student with a disability from school for more than ten consecutive school days is a significant change in placement. Section

504's implementing regulations require a recipient to evaluate a student with a disability before any significant change in placement. 34 C.F.R. § 104.35(a). Clinton Prairie did not evaluate J.S. before excluding him.

**E. The October 1, 2025 Conference**

34. Clinton Prairie convened a manifestation determination conference on October 1, 2025, after J.S. had already been out of school for ten school days.

35. The committee considered only whether J.S.'s statement was related to his "eligibility of Other Health Impairment."

36. At the conference, R.H. told the committee that she was pursuing autism testing for J.S. and that J.S.'s sister had recently been diagnosed with autism. The committee did not evaluate J.S., did not conduct a functional behavioral assessment, did not defer its decision pending evaluation, and did not consider whether J.S.'s conduct was related to suspected autism.

37. The committee concluded that J.S.'s IEP had been implemented "with fidelity" because J.S. had shown academic growth, and that his conduct was not a manifestation of his disability.

38. At the same conference, Clinton Prairie added to J.S.'s IEP a new accommodation, which did not appear in his prior IEP, requiring "warning of any schedule or staff change (example: substitute teacher, lunch/recess teacher, pep session, field trip, etc.)."

39. Assistant Principal Hillary Guffy explained that under Clinton Prairie's student handbook, the consequence for "Threats against students/staff/building" is "up to expulsion."

40. R.H. explained that excluding J.S. for the rest of the school year would harm him and asked for an alternative. She was told that no exception could be made.

41. Clinton Prairie offered R.H. two options: sign a "Form 16A" alternative-to-expulsion agreement, or proceed to an expulsion hearing. Under either option, J.S. would be excluded from school through May 22, 2026, the last day of the school year, and Clinton Prairie told R.H. that J.S.'s services would be the same under either option.

42. R.H. asked whether J.S.'s exclusion could end after winter break. Assistant Principal Guffy responded that she would discuss that option with the principal and the superintendent. The exclusion was not shortened at that time.

**F. The Form 16A Agreement**

43. On October 10, 2025, R.H. signed the Form 16A. The Form 16A recited that J.S. and R.H. waived their statutory and constitutional rights to contest the expulsion, barred J.S. from campus except for required state testing, and barred him from all extracurricular activities, school-sponsored events, and clubs.

44. R.H. signed the Form 16A under pressure, after J.S. had already been excluded from school for more than three weeks, when Clinton Prairie

had presented her with a choice between two forms of exclusion for the rest of the school year and had told her that J.S.'s services would be the same either way. The Form 16A did not reflect a meaningful or voluntary choice.

**G. Homebound Placement**

45. From October 2, 2025 through January 20, 2026, Clinton Prairie placed J.S. in a "Homebound/Hospital" setting.

46. J.S.'s live instruction during the homebound placement consisted of three 30-minute Zoom sessions per week, or ninety minutes per week, with his teacher of record. The rest of his instruction consisted of self-directed online coursework.

47. The online platform, Edmentum, was not available to J.S. until November 11, 2025, in part because Clinton Prairie's network blocked it on J.S.'s school device. Until then, J.S. worked from paper packets.

48. According to Plaintiffs' records, 37 Zoom sessions were scheduled during the homebound placement and 21 were held. Nine sessions were not held for reasons attributable to Clinton Prairie, including school breaks, testing, Edmentum access, and teacher scheduling conflicts.

49. J.S. received no occupational therapy services from Clinton Prairie during his exclusion.

50. R.H. was required to sit with J.S. and operate his screen during his Zoom sessions.

51. On December 22, 2025, R.H. asked Clinton Prairie in writing for additional instructional support for J.S. On January 5, 2026, Principal Harlow

refused, writing: “I do not think that adding additional time for school staff to work with John is necessary at this time. . . . We do not have tutoring services through CPE.”

52. Plaintiffs paid privately for tutoring for J.S. beginning December 22, 2025.

**H. J.S.’s Return to School**

53. At a case conference on January 15, 2026, held after more than sixty instructional days of homebound placement, Principal Harlow stated that Clinton Prairie “treated all verbal threats the same way.”

54. At that conference, Clinton Prairie ended J.S.’s exclusion. J.S. returned to school in person on January 21, 2026, subject to a daily search of his backpack “due to his threatening behavior” and a threat assessment.

55. At the same conference, Clinton Prairie agreed for the first time to evaluate J.S. for autism and a specific learning disability and to conduct a functional behavioral assessment.

56. The decisions to exclude J.S., to limit his services during the exclusion, and to refuse additional instruction were made or approved by Principal Harlow, Assistant Principal Guffy, and, on information and belief, Superintendent Rebecca Boddicker, officials who possessed final policymaking authority for student discipline at Clinton Prairie by delegation from its Board of School Trustees.

### I. Harm to J.S. and His Parents

57. During the exclusion, J.S.'s grades fell from an A in Language Arts, a B in Math, and an A+ in Social Studies in the first nine weeks of the school year to a B (86.76%), a C (77.47%), and a B (85.11%) as of January 15, 2026. His reading fluency, which had measured 105 and 72 correct words per minute before the exclusion, measured 52, 68, and 75 correct words per minute during it, and his NWEA reading score fell from 212 to 206.

58. J.S. was isolated from his classmates for approximately four months, was barred from extracurricular activities and school-sponsored events, bears a disciplinary record classifying him as having made a threat, and has been subjected to daily backpack searches. He suffered emotional distress as a result.

59. R.H. paid out of pocket for evaluations, private therapies, and private tutoring that Clinton Prairie did not provide; incurred mileage for more than 1,500 miles of travel; spent more than one hundred hours in travel and appointments; supervised J.S.'s homebound instruction daily for approximately four months; and suffered emotional distress.

60. T.S. suffered economic losses, including lost wages and emotional distress, as a result of Clinton Prairie's conduct.

## VI. CAUSES OF ACTION

### COUNT I — SECTION 504 OF THE REHABILITATION ACT

(On behalf of J.S.)

61. Plaintiffs incorporate by reference the preceding paragraphs.

62. Section 504 provides that no otherwise qualified individual with a disability shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

63. J.S. is a qualified individual with a disability, and Clinton Prairie receives federal financial assistance.

64. Clinton Prairie violated Section 504 and its implementing regulations by, among other things: (a) excluding J.S. from school for disability-related conduct without reasonably modifying its discipline policies; (b) making a significant change in J.S.'s placement without first evaluating him, in violation of 34 C.F.R. § 104.35(a); (c) affording J.S. an educational opportunity that was not equal to, and not as effective as, that afforded to others, in violation of 34 C.F.R. § 104.4(b)(1)(ii)–(iii); (d) excluding J.S. from nonacademic and extracurricular activities, in violation of 34 C.F.R. § 104.37; and (e) applying a uniform practice of treating all verbal threats the same way without individualized consideration of J.S.'s disabilities.

65. Clinton Prairie acted intentionally and with deliberate indifference. It knew that J.S. had disabilities, knew from R.H. that he was suspected of having autism and that exclusion would harm him, and nonetheless excluded him, refused to modify its policy, refused additional instruction, and did not evaluate him until after more than sixty instructional days of exclusion.

66. As a direct and proximate result, J.S. suffered harm and is entitled to compensatory damages, including damages for economic losses; injunctive relief; and attorneys' fees and costs under 29 U.S.C. § 794a(b).

**COUNT II — TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

(On behalf of J.S.)

67. Plaintiffs incorporate by reference the preceding paragraphs.

68. Title II provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

69. Clinton Prairie is a public entity, and J.S. is a qualified individual with a disability.

70. Clinton Prairie violated Title II and its implementing regulations by, among other things, excluding J.S. from its services, programs, and activities by reason of his disability, 28 C.F.R. § 35.130(b)(1)(i)–(iii); failing to make reasonable modifications in its policies, practices, and procedures when modifications were necessary to avoid discrimination on the basis of disability, 28 C.F.R. § 35.130(b)(7)(i); and utilizing methods of administration, including its uniform practice regarding verbal threats, that had the effect of subjecting J.S. to discrimination on the basis of disability, 28 C.F.R. § 35.130(b)(3).

71. Clinton Prairie acted intentionally and with deliberate indifference, for the reasons stated in Count I.

72. As a direct and proximate result, J.S. suffered harm and is entitled to compensatory damages, including damages for economic losses; injunctive relief; and attorneys' fees and costs under 42 U.S.C. § 12205.

**COUNT III — 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT**

(On behalf of J.S.)

73. Plaintiffs incorporate by reference the preceding paragraphs.

74. Clinton Prairie acted under color of state law.

75. J.S. has a property interest in public education protected by the Due Process Clause of the Fourteenth Amendment. *See Goss v. Lopez*, 419 U.S. 565 (1975).

76. Clinton Prairie deprived J.S. of that interest without due process of law by excluding him from school for twelve school days without services before any hearing, and by conditioning his continued education on a waiver of his right to an expulsion hearing that was not a meaningful or voluntary choice.

77. Clinton Prairie also denied J.S. the equal protection of the laws by excluding him from school based on disability-related behavior without a rational basis for doing so.

78. The deprivations resulted from Clinton Prairie's policy, custom, or practice of treating all verbal threats the same way without individualized consideration, and from decisions made or ratified by officials with final policymaking authority for student discipline. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

79. As a direct and proximate result, J.S. suffered harm, including emotional distress, and is entitled to compensatory damages and attorneys' fees and costs under 42 U.S.C. § 1988.

**COUNT IV — ASSOCIATIONAL DISCRIMINATION**

(On behalf of R.H., individually)

80. Plaintiffs incorporate by reference the preceding paragraphs.

81. R.H. is a person aggrieved within the meaning of 29 U.S.C. § 794a(a)(2), and Title II prohibits a public entity from excluding or otherwise denying equal services, programs, or activities to an individual because of the known disability of an individual with whom she is known to have a relationship or association. 28 C.F.R. § 35.130(g).

82. Clinton Prairie had actual knowledge of R.H.'s relationship with J.S. and of his disabilities.

83. Clinton Prairie subjected R.H. to adverse treatment because of that association, including disregarding her repeated requests for speech-language services, for an alternative to a year-long exclusion, and for additional instruction; and requiring her to serve as J.S.'s daily instructional support during his exclusion.

84. Clinton Prairie's conduct caused R.H. direct and personal injury, including economic loss.

**VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Defendant's conduct violated Section 504, Title II of the ADA, and the Fourteenth Amendment;

B. Order Defendant to remove the September 17, 2025 disciplinary entry, the associated suspension record, and the Form 16A agreement from J.S.'s education records, and enjoin Defendant from disclosing them to any third party;

C. Enjoin Defendant from subjecting J.S. to backpack searches or other safety measures based on the September 17, 2025 statement absent an individualized assessment;

D. Order Defendant to adopt procedures ensuring that, before it excludes a student with a disability for more than ten cumulative school days, it evaluates the student as required by 34 C.F.R. § 104.35(a) and considers reasonable modifications to its discipline policies;

E. Award compensatory damages in an amount to be proven at trial, including damages for economic losses under Section 504 and the ADA, and all compensatory damages available under 42 U.S.C. § 1983, including damages for emotional distress;

F. Award nominal damages;

G. Award reasonable attorneys' fees and costs under 29 U.S.C. § 794a(b) and 42 U.S.C. §§ 12205 and 1988;

H. Award pre- and post-judgment interest; and

I. Grant all other relief the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

Respectfully submitted,

/s/ Alexandra M. Curlin
Alexandra M. Curlin (Atty No. 24841-49)
Bridget M. Boland (Atty No. 39170-49)
Curlin & Clay Law Association of Attorneys
8510 Evergreen Ave., Ste. 200
Indianapolis, IN 46240
Telephone: (317) 202-0301
Facsimile: (317) 536-3663
amcurlin@curlinclaylaw.com
bboland@curlinclaylaw.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on September 29, 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system / a copy was served on Defendant by certified mail.

/s/ Alexandra M. Curlin
Alexandra M. Curlin